IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LARICCIA, | ) | CASE NO. 1:11-CV-0513 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant, | ) | |

This case is before the undersigned pursuant to the consent of the parties. (Doc. 9).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Robert Lariccia's (the "Plaintiff") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

I.     INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiff protectively filed an application for Disability Insurance benefits on August 7, 2006, alleging a disability onset date of October 28, 2004. (Tr. 188). The Plaintiff's application was denied initially on October 27, 2006, (Tr. 138-40), and upon reconsideration on March 6, 2007. (Tr. 142-43).  Following this denial, the Plaintiff submitted a timely request for an administrative hearing before an Administrative Law Judge ("ALJ"). (Tr. 145).

On April 1, 2009, ALJ Thomas A. Ciccolini (the "ALJ") held a hearing in Cleveland, Ohio, during which the Plaintiff testified. (Tr. 93-115). The Plaintiff was not represented by

counsel at this hearing. (*Id.*).   The ALJ concluded the hearing and requested the Plaintiff be seen by a consultative examiner for the Bureau of Disability Determination in an effort to resolve conflicts in the medical record. (Tr. 110).  The ALJ stated that after the consultative examination, a supplemental hearing would be held. (*Id.*).  Subsequent to the first hearing, the Plaintiff sought representation. (Tr. 162).  On July 27, 2009, ALJ Ciccolini held a second hearing, during which the Plaintiff, vocational expert, Thomas Nimberger (the "VE"), and medical expert, Dr. Hershel Goren (the "ME"), testified. (Tr. 54-80).

On August 12, 2009, the ALJ issued a "Notice of Decision-Unfavorable". (Tr. 41-43).  In his decision, the ALJ ruled that the Plaintiff had the residual functional capacity ("RFC") to perform the exertional demands of light work but was subject to limitations that reduced his ability to fulfill the full range of such work.  (Tr. 48).  On August 13, 2009, the Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 39).  In a notice dated January 28, 2011, the Appeals Council declined review and the ALJ's decision became the final determination of the Commissioner. (Tr. 1-6).  Thereafter, the Plaintiff filed an appeal to this Court.   The Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    EVIDENCE

### A. Personal and Vocational Information

The Plaintiff was born in 1962 and was forty-two years old on his alleged onset date; forty-four years old on his date last insured; and forty-six years old at the time the ALJ issued his decision. (Tr. 51).  The Plaintiff was at all times classified as a younger individual under 20 C.F.R. § 404.1563(c).   The Plaintiff did not complete high school, but testified that he had obtained his GED. (Tr. 102). The Plaintiff joined the United States Air Force in 1981 and his past work experience includes working as an air craft mechanic and nuclear security PRP

programmer. (Tr. 232). The Plaintiff was honorably discharged from the military in March 2001. (Tr. 637).

B. Hearing Testimony

a. Plaintiff's Testimony

At the first hearing conducted on April 1, 2009, the Plaintiff testified that he had not worked since February 28, 2001. (Tr. 103). The Plaintiff reported that he was unable to perform repetitive motions with his right arm due to a nerve impingement in his shoulder. (Tr. 109). The Plaintiff conveyed that he could sit for ten or fifteen minutes at a time. (Tr. 111). Furthermore, the Plaintiff testified that the Veterans Administration ("VA") determined that he was one hundred percent (100%) disabled in June 2005. (Tr. 104-06, 112).

At the second hearing conducted on July 27, 2009, the Plaintiff testified to the severity of the pain associated with his foot impairment.  (Tr. 66).  The Plaintiff reported that his bilateral foot neuroma made it very painful to walk and caused problems throughout the day. (*Id.*). The Plaintiff reiterated the VA's 100% disability determination and testified that it was based primarily on his mental restrictions. (Tr. 68).  Additionally, the Plaintiff indicated that his psychological impairments had deteriorated to the point that he was homebound. (Tr. 69).

b. Medical Expert's Testimony

During the second hearing, an ME testified regarding the Plaintiff's physical and mental impairments.  The ME testified that he had reviewed all of the medical reports in the record and found that the Plaintiff suffered from four severe impairments: right carpal tunnel syndrome, back pain, major depressive disorder and panic disorder. (*Id.*).  The ME reported that the Plaintiff's physical impairments prevented the Plaintiff from using ladders, ropes and scaffolds. (Tr. 60).  The ME also noted that the Plaintiff was only occasionally able to stoop, kneel, crouch,

3

and crawl.  (*Id*.). The ME stated that the Plaintiff was able to lift 20 pounds occasionally and 10 pounds frequently, but unable to work in an environment where high production quotas were required. (*Id*.).  Finally, the ME opined that the Plaintiff could only have superficial interpersonal interactions with supervisors, coworkers and the general public. (*Id*.). The ME concluded that the Plaintiff was able to sustain employment despite his limitations. (*Id*.).

C.  <u>Medical Evidence</u>

The record is replete with reports concerning the Plaintiff's physical and mental impairments.  While there is extensive medical evidence in the record, the parties' arguments mainly refer to medical opinions from the VA and various state agency consulting examiners. Therefore, the Court limited the following discussion of the evidence to only those records which were pertinent to the Court's analysis.  However, the Court's overall review was not limited to these opinions.

The Plaintiff has been seen by a number of physicians at the VA, but both parties and the ALJ focused on opinions from the following three physicians at the VA: Dr. Klingenberger, Gerald Hopperton, and Dr. Proctor.  Dr. Karen Klingenberger had been treating the Plaintiff since May 24, 2002, following a motorcycle accident the Plaintiff was involved in which caused injuries to his  right shoulder, arm, hand and wrist. (Tr. 381).  On August 22, 2002, Dr. Klingenberger opined that the Plaintiff was unable to perform repetitive motions due to his right arm injuries. (Tr. 378).

On April 6, 2005, the Plaintiff was examined by physician's assistant ("PA"), Gerald Hopperton, at the VA. (Tr. 270).  The PA noted that the Plaintiff was diagnosed with bilateral foot neuroma and the PA reported that the foot impairment caused the Plaintiff pain and discomfort. (*Id*.). The PA commented that any type of physical work that involved prolonged

4

standing, walking or climbing increased the Plaintiff's foot pain. (*Id*.). The PA recommended that the Plaintiff could perform sedentary work. (*Id*.).

The Plaintiff was also seen by psychiatrist Dr. Monica H. Proctor for the VA on April 6, 2005. (Tr. 486-90).  Dr. Proctor examined the Plaintiff for purposes of evaluating the Plaintiff's mental state following an application for VA connected unemployability. (Tr. 486).  Dr. Proctor evaluated the Plaintiff's clinical chart with the VA and examined the Plaintiff for a total of one and a half hours.  (*Id*.). Dr. Proctor found that the Plaintiff suffered from clinical depression, and experienced crying spells, irritability, self-deprecating thoughts, insomnia, poor concentration and decreased interests. (Tr. 488).  Her report revealed that the Plaintiff experienced low tolerance of frustration and feelings of hopelessness and helplessness. (*Id*.).  Dr. Proctor concluded that the Plaintiff's clinical depression "appear[ed] to have caused deterioration in his functioning to the point that he [wa]s not felt to be employable." (Tr. 490).  This report is duplicated on page 269 of the transcript. (Tr. 269).

On October 28, 2004, the Plaintiff filed an application with the VA to increase his service connected compensation and increase his disability rating.[1]  (Tr. 307).  On June 24, 2005, the VA increased the Plaintiff's disability rating to 100%. (Tr. 307-24).  The VA found that the Plaintiff's following impairments had worsened since its prior disability rating: depression, vertebral spondylosis, lumbar stain, and left foot neuroma.[2]  (Tr. 308).  The VA found that the Plaintiff's following impairments had remained the same severity level since its prior disability

---

[1] It is unclear when the Plaintiff first applied for service connected compensation and VA disability.  The report in the record simply states that the VA was increasing his disability rating from the prior disability rating.

[2] The VA increased the Plaintiff's disability of depression from 10% to 70% and vertebral spondylosis from 10% to 20%. The VA increased the Plaintiff's disabilities of lumbar strain and left foot neuroma from 0% to 10%.

rating: thyroiditis, gastroesophageal reflux disease, prostatitis, right carpal tunnel syndrome, medial meniscal derangement and medial plica of the left knee, tendonitis of the right knee, impingement syndrome of the right shoulder, chronic sinusitis, deviated septum and right foot neuroma. (Tr. 309). The percentages assigned to each individual impairment create a combined total of 240%.  (Tr. 308-09).  While the Court recognizes that the combined percentages add up to more than 100%, the VA explained how a veteran's disability is determined.  (*Id*.). The VA explained that it used a combined rating table that considered the effect of the Plaintiff's impairments from the most serious to least serious conditions to assess the 100% disability rating. (*Id*.).

Following the determination from the VA that he was 100% disabled, the Plaintiff applied for Disability Insurance benefits. (Tr. 67, 187). The Plaintiff was evaluated by three consultative examiners in connection with his current application for benefits. On October 10, 2006, Dr. Sam N. Ghoubrial examined the Plaintiff and noted that the Plaintiff suffered from neuromas of the feet, knee pain, left knee osteoarthritis, bilateral carpal tunnel, back pain, cleft lip, and severe GERD. (Tr. 659).  Dr. Ghoubrial reported that the Plaintiff stated that "he [was] unable to work predominantly because of the pain in his feet," but the Plaintiff claimed to suffer from chronic pain in other areas, as well as numbness and tingling in his right hand.  (Tr. 659). However, Dr. Ghoubrial concluded that "based on my evaluation of this claimant, I don't feel that he would have any difficulty sitting, walking, lifting, carrying, handling objects, hearing, speaking [or] traveling." (Tr. 663).

Dr. Willa Caldwell completed a "Physical Residual Functional Capacity Assessment" of the Plaintiff on October 26, 2006.  (Tr. 668-74). Dr. Caldwell reported that the Plaintiff was capable of lifting 50 pounds occasionally and 25 pounds frequently. (Tr. 669).  Dr. Caldwell

opined that the Plaintiff "c[ould] do most activities frequently within tolerance, allowing for discomfort." (Tr. 670).  Dr. Caldwell concluded that the Plaintiff did not have any limitations and was capable of medium level extertional work. (Tr. 669).

Following the Plaintiff's first hearing on April 1, 2009, the ALJ requested the Plaintiff be seen by a consultative examiner. On May 12, 2009, the Plaintiff was examined by Dr. Dariush Saghafi.  Dr. Saghafi reported that the Plaintiff was limited to sitting, standing and walking 15 minutes at a time in an eight hour day due in part to his foot impairment. (Tr. 932-45). Dr. Saghafi relayed that the Plaintiff's chief complaint was pain in the feet, yet the Plaintiff believed that the majority of his inability to work stemmed from his mental problems. (Tr. 932).  Dr. Saghafi also opined that the Plaintiff had a normal gait without predisposition to falls and could continuously use his hands without limitations.  (Tr. 934-45).

## III.    ALJ'S DECISION

After completing a review of the record, the ALJ determined that the Plaintiff was not disabled. [3]   At step one of the sequential evaluation analysis, the ALJ found that the Plaintiff had

---

[3] The term "disability", narrowed to its statutory meaning within the Social Security Act, includes only physical or mental impairments that are medically determinable and severe enough to prevent the claimant from performing his/her past job and engaging in substantial gainful activity that is available in the national economy.  *Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Social Security Regulations require ALJs to resolve a disability claim through a given five step sequential evaluation.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The Sixth Circuit has summarized the given process as follows:

1. If a claimant is doing substantial gainful activity – i.e., working for a profit – she is not disabled.

2. If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

3. If a claimant is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her

7

not engaged in substantial gainful activity from his alleged onset date, October 28, 2004, through his date last insured, December 31, 2006.  (Tr. 46).  At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: "right carpal tunnel syndrome, chronic lumbar strain and cervical strain, and depression." (*Id*.).  However, at step three, the ALJ concluded that none of these impairments, in combination or individually, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.).

Before proceeding to step four, the ALJ determined that the Plaintiff retained the RFC to perform light work but was limited to low stress work with low production quotas, without complex tasks that involved fine details or piece work.  (Tr. 48).  The ALJ further limited the Plaintiff to a workplace free from unprotected heights, ladders, ropes, scaffolds, moving machinery and hazards. (*Id*.). The ALJ also found that the Plaintiff could not perform frequent stooping or bending.  (*Id*.). Additionally, the ALJ opined that the Plaintiff was limited to minimal interaction with the general public, co-workers and supervisors. (*Id*.).

At step four, the ALJ determined that the Plaintiff could not perform any of his past work, as the VE testified that a person with the Plaintiff's RFC could not fulfill the requirements of the Plaintiff's past positions as an aircraft maintenance person and construction worker. (Tr.

---

impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

5. Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

51). Finally at step five, the ALJ determined that the Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a mail clerk, cafeteria attendant and office cleaner. (Tr. 52).

## IV.    DISABILITY STANDARD

A claimant is entitled to receive benefits under the Social Security Act only when he establishes disability within the meaning of the Act. 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.905.

## V.    STANDARD OF REVIEW

The Court's review is limited to a determination of whether there is substantial evidence in the entirety of the record to support the ALJ's findings of fact and whether the ALJ employed the proper legal standards in making the decision. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of evidence. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  "The substantial evidence standard … presupposes that there is a zone of choice within which decision-makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir.1984)).

The substantial evidence standard requires the Court to affirm the findings of the ALJ if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*citing Consol. Edison Co., 305 U.S. at 229*.  This Court may not decide this case de novo, resolve conflicts in the

9

evidence or decide issues of credibility. *Garner*, 745 F.2d at 387. The Commissioner's determination must be affirmed if it is supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently. *See Mullen*, 800 F.2d at 545. "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported the opposition conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, the Court may examine all of the evidence in the record in making its decision, regardless of whether the evidence was cited in the opinion of the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

VI.    ANALYSIS

The Plaintiff challenges the ALJ's decision on two grounds.  First, the Plaintiff contends that the ALJ violated the treating physician rule when he failed to articulate "good reasons" for affording less weight to the various opinions from the physicians who treated him at the VA (the "VA physicians") and consultative examiner Dr. Saghafi.  Second, the Plaintiff argues that the ALJ erred when he failed to find the Plaintiff's bilateral foot neuroma as a severe impairment. The Court will address each argument in turn.

A.  Treating Physician Rule

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards.  One such standard, known as the "treating physician rule", requires the ALJ to give special attention to the findings of a claimant's treating physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide

a complete picture of the individual's health and treatment history.  *Id*.; 20 C.F.R. § 404.1527(c)(2).[4]  In *Wilson v. Commissioner of Social Security*, the Court explained that treating physicians:

> Are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique prospective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson*, 378 F.3d at 544. (*citing* 20 C.F.R. § 404.1527(d)(2)) (alterations in original).

Opinions from such physicians are entitled to controlling weight if: (1) they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must determine how much weight to assign the opinion by applying specific factors set forth in the governing regulations. These factors include: the length of the treating relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other relevant factor which may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

The Commissioner also imposes a duty on the ALJ to always provide "good reasons" for the weight ultimately assigned to the treating source's opinions. 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be

---

[4] Effective March 26, 2012, Sections 404.1527 and 416.927 of the Code of Federal Regulations were amended.  Paragraph (d) of each section was redesignated as paragraph (c). *See* 77 F.R. 10651-01, 2011 WL 7404303.

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. This requirement is not simply a formality; it safeguards a claimant's procedural rights. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The good reasons requirement is intended to serve two purposes. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id*. at 243.

Regardless of how much weight is given to the treating physician's opinion, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). Statements by a physician indicating that the claimant is "unable to work" are not entitled to deference because only the Commissioner can render a decision on this issue. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010); SSR 96-5p. Nevertheless, "the ALJ may not entirely ignore such an opinion", rather he must explain the consideration he gave to the treating physician's opinion. *Id*. (*citing Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); SSR 96-5p). Ultimately, an ALJ is required to evaluate all of the medical evidence received in the record. 20 C.F.R. § 404.1527(c).

    1.  Veterans Administration Physician's Opinions

The Plaintiff asserts two assignments of error in regards to the ALJ's treatment of the opinions offered from the physicians at the VA.  First, the Plaintiff implies that the collective opinions of the various VA physicians should have been given controlling weight and been viewed as the Plaintiff's "treating physician" because collectively the doctors at the VA had been treating the Plaintiff for more than 30 years. The Plaintiff contends that the ALJ violated the treating physician rule by not giving "good reasons" for rejecting the various opinions of the VA physicians.  Second, the Plaintiff argues that the ALJ erred when he failed to articulate good reasons for assigning less weight to three specific findings made by different medical professionals at the VA: (1) the medical opinion by the PA indicating that the Plaintiff could at best perform sedentary work and the medical opinion by Dr. Klingenberger that the Plaintiff was unable to perform repetitive motions due to his physical impairments; (2) Dr. Proctor's finding that the Plaintiff was ultimately unemployable due to his clinical depression and resulting deterioration in social functioning; and (3) the VA's finding that the Plaintiff was 100% disabled.

The various physicians from the VA cannot collectively be viewed as a single treating source.  The Plaintiff has not identified a specific doctor who would qualify as the Plaintiff's treating physician under the Social Security regulations.  A "treating source" is defined as a claimant's "own physician, psychologist, or other acceptable medical source[5] who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.  At no point does the Plaintiff draw the Court's attention to a specific physician who had a long-standing treating relationship with him who could provide a complete picture of his health and

---

[5]  Acceptable medical sources are classified as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists who can provide evidence to establish an impairment. 20 C.F.R. § 404.1513(a).

treatment history. Various doctors who may have seen the Plaintiff on one or several occasions do not constitute the equivalence of a single treating physician. Therefore, the Court finds that the various opinions from the VA physicians were not collectively subject to the heightened scrutiny of the treating physician rule.

The Plaintiff's second argument, that the ALJ failed to articulate "good reasons" for assigning less weight to three medical opinions from the VA, is also without merit. The Plaintiff first points to the opinion of the PA who opined that the Plaintiff could "at best" perform limited sedentary work due to the Plaintiff's physical impairments. A physician's assistant is not classified as a treating physician or an acceptable medical source, but rather is considered to be an "other" medical source. 20 C.F.R. § 404.1513(d). While the ALJ is required to articulate good reasons for the weight assigned to the opinion of a treating physician, the ALJ is not required to apply the principles of the treating physician rule to opinions from "other" medical sources. Nevertheless, the Commissioner should evaluate opinions from "other" medical sources when considering a claimant's application for benefits, and an ALJ's rejection of an "other" medical source must be supported by substantial evidence.

In the instant case, the ALJ evaluated the PA's findings and concluded that they were not supported by objective medical evidence. (Tr. 50). The ALJ noted that the record showed that the Plaintiff was able to perform greater lifting, standing and walking that what the PA reported. (*Id*.). The ALJ also indicated that the PA's opinion did not define the term "sedentary". (*Id*.). Without such definition, the ALJ could not determine if the VA's definition of sedentary work included the same limitations as in the Social Security context of the term, such as lifting no more than ten pounds and occasional walking and standing. 20 C.F.R. § 404.1567(a). Therefore,

the ALJ properly considered the PA's findings and gave sufficient reasons for discrediting the opinion.

The Court also rejects the Plaintiff's claim that the ALJ failed to address the medical opinion from the VA that found that the Plaintiff was unable to perform repetitive motions.  The Plaintiff argues that the ALJ failed to address the opinion of Dr. Klingenberger, who stated that the Plaintiff was unable to perform repetitive motions following a motorcycle accident in 2002.[6] But, the ALJ properly evaluated the Plaintiff's right arm impairments in his RFC assessment and adequately explained his findings.  The ALJ concluded that "objective testing show[ed] that the claimant still ha[d] functional strength in the arm for dexterity." (Tr. 49). The ALJ highlighted the various objective medical tests that showed the Plaintiff retained normal strength, grip, grasp and manipulation in his arm.  (*Id.*). The Court also notes that Dr. Klingenberger's opinion was dated August 22, 2002, which predated the Plaintiff's alleged onset date.  Thus, it is not apparent to the Court that the limitations announced by Dr. Klingenberger would have been present between October 28, 2004 and December 31, 2006, the relevant period under review. Therefore, the Court finds that the ALJ addressed the Plaintiff's ability to perform repetitive motions and offered an adequate explanation as to why this finding was not credited.

The Court also finds the Plaintiff's next argument is without merit.  The Plaintiff next argues that the ALJ offered no explanation as to why the opinion that he was unemployable due to his clinical depression was afforded less weight.  On April 5, 2005, Dr. Proctor opined that the Plaintiff's clinical depression had caused deterioration in the Plaintiff's social function to the point that he was unemployable.  (Tr. 490).  Although the ALJ discredited Dr. Proctor's finding,

---

[6] The Plaintiff refers to page 379 of the transcript to show that a VA physician found him unable to perform repetitive motions.  However, the record reveals that this finding is on page 378 of the transcript.

the ALJ did not ignore the Plaintiff's problems with depression.  The ALJ found that one of the Plaintiff's severe impairments was depression.  (Tr. 46).  The ALJ further evaluated the Plaintiff's mental limitations and acknowledged that he was receiving Paxil, had been stable on antidepressants and the Plaintiff did not receive regular treatment by a psychologist and psychiatrist. (Tr. 49).  The ALJ also stated, "while it was assessed that the claimant was unemployable, it was noted that his [depression] could improve and that he could become employable with treatment." (*Id.*).

The Court finds that the ALJ did offer an explanation as to why Dr. Proctor's opinion that the Plaintiff was unemployable was afforded less weight.  Dr. Proctor stated, "with proper mental health intervention and treatment, it is possible that [the Plaintiff's] condition would improve to the point that he may again be employable." (Tr. 490).  The ALJ acknowledged Dr. Proctor's entire opinion and evaluated it with the rest of the objective medical evidence in the record.  Furthermore, statements by a physician indicating that the claimant is "unable to work" are not entitled to any special deference because only the Commissioner can render a decision on that issue.  *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010); SSR 96-5p. Therefore, the undersigned finds that the ALJ did offer an adequate explanation as to why the opinion that the Plaintiff was unemployable due to his depression was afforded less weight.

The Plaintiff further alleges that the ALJ failed to take into consideration that several months after Dr. Proctor's evaluation, the Plaintiff was found to be 100% disabled, with 70% contributed to depression.  The Plaintiff contends that the ALJ's reliance on Dr. Proctor's opinion from April 2005, which found that the Plaintiff could become employable with medication, conflicts with the VA's 100% disability rating issued two months later.  The ALJ acknowledged the VA's disability rating and opined that, "while the claimant's percentage for

16

depression was increased to 70%, these percentages nevertheless support the ultimate conclusion that neither [the mental nor physical] impairments are totally disabling in the Social Security disability context." (Tr. 51).

The ALJ did take the VA's disability rating into consideration and adequately resolved any apparent conflict between Dr. Proctor's statement that the Plaintiff could become employable with medication and the latter 100% disability rating by the VA.  The ALJ articulated that the 70% disability rating was not indicative of a severe impairment under the Social Security context, because the VA found that the Plaintiff was not fully disabled from depression alone.  While the Plaintiff was assigned a 70% disability rating for depression, as stated above, the VA's determination of disability considers the totality of a veteran's impairments and limitations and a combined ratings table ranks the effects of those impairments on a veteran's ability to work. (Tr. 309).  The VA found that the combination of depression and the Plaintiff's other impairments accounted for the 100% disability rating, meaning the Plaintiff was not disabled based solely on depression.  Therefore, the Court finds that the ALJ's decision was supported by substantial evidence and the ALJ properly evaluated the medical opinions concerning the Plaintiff's mental impairments.

The Plaintiff's final objection to the ALJ's treatment of the opinions of the VA physicians is that the ALJ failed to take into consideration the VA's finding that the Plaintiff was 100% disabled.  While a VA's disability rating is not determinative on a Social Security disability determination, the ALJ must at least take it into consideration:

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance

17

of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

SSR 06-03p.

While a VA's disability rating may be entitled to some consideration, it does not necessarily get controlling weight. *Paul v. Astrue*, 827 F.Supp.2d 739, 744 (E.D. Ky. 2011). In the instant case, it is clear that the ALJ considered the VA's overall disability rating. The ALJ stated, "while the claimant received a disability rating from the Veterans Administration of 100% based on all of his conditions during his service, not all of these conditions are deemed severe impairments in this case." (Tr. 51). As stated above, the ALJ adequately articulated why the 70% depression rating was not given deference. The ALJ further explained that he did not credit the VA's disability finding because the Plaintiff's other physical impairments, such as his right carpal tunnel syndrome and lumbar strain, only accounted for 10% of the Plaintiff's VA disability finding respectively. (*Id.*). The ALJ made clear that the VA's assignment of 10% to certain physical impairments was indicative that these impairments were not severe in the Social Security context. The individual disability assignments of 10% to the Plaintiff's right carpal tunnel syndrome, chronic sinusitis and other impairments equaled 240% total and 100% on a weighted rating scale under the VA disability standards, but that did not mean that each impairment rose to the level of being disabling in the Social Security context. (*Id.*). Moreover, under the Social Security Act, the issue of disability is a question reserved to the Commissioner and determinations of other agencies are not binding. 20 C.F.R. § 404.1504. Therefore, the Court finds that the decision of the ALJ to not place controlling weight on the 100% disability rating by the VA is supported by substantial evidence.

2.   Dr. Saghafi's Opinion.[7]

Following the Plaintiff's first hearing, the Plaintiff was seen by a consultative examiner, Dr. Saghafi, on May 12, 2009.  Dr. Saghafi reported that the Plaintiff was limited to sitting, standing and walking 15 minutes at a time in an eight hour day due in part to the Plaintiff's foot impairment. Dr. Saghafi also opined that the Plaintiff had a normal gait without predisposition to falls and could continuously use his hands without limitations.  Dr. Saghafi concluded that the Plaintiff was "capable of seated types of work." (Tr. 934).

The ALJ assigned great weight to Dr. Saghafi's finding that the Plaintiff had the ability to use his hands continuously. However, the ALJ assigned less weight to Dr. Saghafi's other findings, explaining that the limitations the physician placed on the Plaintiff's abilities with sitting, standing and walking were not supported by Dr. Saghafi's objective medical finding of a normal gait and seemed to be based on the Plaintiff's subjective estimations. The Plaintiff argues that the ALJ violated the treating physician rule when he failed to provide "good reasons" for rejecting Dr. Saghafi's findings.  The Plaintiff also contends that the ALJ erred when he failed to explain how Dr. Saghafi's finding of a normal gait undermined the restrictions he placed on the Plaintiffs ability to sit, stand, and walk.

Though the Plaintiff argues that Dr. Saghafi's opinion should be given deference under the treating physician rule, the Plaintiff acknowledged that Dr. Saghafi was a consultative examiner and not a treating physician.  The rationale of the treating physician doctrine does not apply to a consultative physician who only examined the claimant on one occasion. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); 20 C.F.R. § 404.1527(c).  Thus, the ALJ was not

_____

[7] Throughout his brief, the Plaintiff mistakenly refers to Dr. Saghafi as Dr. Vasiloff. The Plaintiff refers to an exhibit in the transcript which was a letter compiled by Dr. Saghafi detailing his consultative examination of the Plaintiff.  Dr. Saghafi addressed the letter to Dr. Vasiloff.

required to give controlling weight to the consultative examiner's opinion, nor was he required to supply good reasons for assigning the opinion less weight.  Nevertheless, the Court finds that the ALJ sufficiently explained why he assigned Dr. Saghafi's opinion less weight.  The ALJ indicated that Dr. Saghafi's conclusion regarding the Plaintiff's ability to sit, stand and walk was inconsistent with the doctor's finding that the Plaintiff had a normal gait. (Tr. 50).  Also, the ALJ opined that Dr. Saghafi's report was seemingly based on the Plaintiff's subjective estimations rather than any medical testing.  Therefore, when assessing an impairment that causes difficulty walking, the objective medical finding of a normal gait was sufficient evidence for the ALJ to discredit Dr. Saghafi.

    B.  Severe Impairment

    At the second step of the sequential analysis, the plaintiff has the burden to show that he has an impairment which significantly interferes with his ability to work.  *See* 20 C.F.R. § 404.1520(c).  In the physical context, this means a significant limitation upon a claimant's ability to walk, stand, sit, lift, push, pull, reach, carry or handle.  *See* 20 C.F.R. § 404.1521(b)(1). The Plaintiff is not required to establish total disability at this step, but rather the second step is a screening tool, allowing the ALJ to dismiss "totally groundless" claims from a medical standpoint.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective or age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985).  The severity requirement is a "de minimis hurdle" in the sequential evaluation process. *Higgs*, 880 F.2d at 862.

Nevertheless, even when an ALJ fails to list one of the claimant's impairments as severe, the error will not always warrant reversal.  Remand is not necessary as long as the ALJ finds the claimant suffers from at least one severe impairment at the second step and continues to evaluate both the claimant's severe and non-severe impairments during the latter steps of the sequential analysis.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  In other words, if an ALJ errs by not including a particular impairment as an additional severe impairment at step two, the error is harmless so long as the ALJ ultimately considers all of the claimant's impairments in determining the claimant's RFC.  *See Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006) (*citing Maziarz*, 837 F.2d at 244).

The Plaintiff contends that the ALJ erred when he failed to find the Plaintiff's bilateral foot neuroma as a severe impairment.  The Plaintiff also argues that it was reversible error for the ALJ to omit any reference to the Plaintiff's bilateral foot neuroma from his opinion. The Commissioner counters that the ALJ's failure to include this condition as a severe impairment was harmless error because the ALJ ultimately considered the Plaintiff's feet problems in his RFC analysis.

The Plaintiff points to four opinions in the record that recognized this condition: Dr. Naranja; PA Gerald Hopperton; Dr. Ghoubrial; and Dr. Saghafi. On December 4, 2000, Dr. Rogelio Naranja diagnosed the Plaintiff with interdigital foot neuroma and prescribed him foot inserts.  On April 6, 2005, the PA referenced the Plaintiff's diagnosis of bilateral foot neuroma and reported that the Plaintiff found shoe inserts helped to alleviate pain. On October 10, 2006, Dr. Ghoubrial acknowledged the condition but opined that the Plaintiff's bilateral foot neuroma was not a severe impairment and would not limit the Plaintiff's ability to work.  On May 12, 2009, Dr. Saghafi addressed the Plaintiff's condition and reported that the Plaintiff was limited to

sitting, standing and walking for 15 minutes at a time in an eight hour day due in part to this impairment.

The record supports the ALJ's decision to omit the Plaintiff's bilateral foot neuroma as a severe impairment at step two of the sequential analysis.  The Plaintiff points to the reports of Dr. Naranja and the PA who both referenced the Plaintiff's diagnosis and treatment plan of the foot impairment. However, the mere diagnosis of a condition is not sufficient to establish that the condition rises to a disabling level.  *See Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988). The Plaintiff points to Dr. Ghoubrial and Dr. Saghafi and their reports related to the Plaintiff's foot impairment.   The ALJ assigned great weight to Dr. Ghoubrial's opinion that the combination of the Plaintiff's impairments did not rise to a disabling severity or pose any restrictions on the Plaintiff's ability to work. (*Id*.).  The ALJ assigned less weight to the portion of Dr. Saghafi's report that specifically related to the Plaintiff's ability to use his feet. (*Id*.). Additionally, the ME testified that bilateral foot neuroma was a podiatric condition, but the ME did not conclude that it was a severe impairment creating any limitations for the Plaintiff.  (Tr. 59).   In regards to the Plaintiff's notion that the ALJ did not mention the bilateral foot neuroma in his opinion, an ALJ is not required to discuss every piece of evidence in the record, so long as all of the evidence is considered and all the conflicts are implicitly resolved. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

Even assuming that the ALJ erred when he failed to include bilateral foot neuroma as a severe impairment, the Court finds that such error was harmless. *Maziarz*, 837 F.2d at 244.   At step two, the ALJ ruled that the Plaintiff suffered from the following severe impairments: right carpal tunnel syndrome, chronic lumbar strain and cervical strain and depression.  (Tr. 46).  The ALJ's recognition of these impairments compelled him to proceed to step three of the sequential

analysis.  The ALJ proceeded and considered the Plaintiff's severe impairments and non-severe impairments in the remaining steps.  The ALJ explicitly discussed and assessed the opinions which referred to this condition.

It is clear to the Court that the ALJ was aware of the diagnosis and considered it in his RFC analysis because the ALJ explicitly evaluated the opinions which addressed this condition. Dr. Ghoubrial's report found that the bilateral foot neuroma did not create any limitations on the Plaintiff's ability to work.  By assigning great weight to Dr. Ghoubrial's opinion, the ALJ considered the Plaintiff's bilateral foot neuroma and properly incorporated the condition into his RFC assessment.  *Eiland v. Astrue*, No. 1:11-CV-1519, 2012 WL 1906305, at *14 (N.D.Ohio May 25, 2012) (The court ruled the ALJ had properly incorporated the plaintiff's carpal tunnel syndrome as a non-severe impairment into the RFC assessment because specific weight was assigned to a doctor's findings that there were no limitations relating to use of the plaintiff's hands.).  Moreover, the ALJ discredited Dr. Saghafi's report that found the Plaintiff could not sit, stand or walk for more than 15 minutes.  It is clear that the ALJ evaluated Dr. Saghafi's findings related to the Plaintiff's foot impairment and implicitly considered it in the RFC analysis.  *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (finding that the ALJ's omission at step two was not reversible error because the ALJ implicitly considered obesity later in his opinion when he discredited a physician who diagnosed the plaintiff with obesity).

Furthermore, with respect to the Plaintiff's objections to the ALJ's critique of Dr. Saghafi's report, even if the ALJ did err at step two, at no point does Dr. Saghafi's opinion mention that the Plaintiff's bilateral foot neuroma would have limited the Plaintiff's ability to work between October 28, 2004 and December 31, 2006.  A claimant is only entitled to Disability Insurance Benefits during the period the claimant is insured.  *Garner v. Heckler*, 745

23

F.2d 383, 390 (6th Cir. 1984). The plaintiff has the burden of establishing the onset of disability prior to the expiration of his insured status.  *Id*. (quoting *Gibson v. Sec'y of Health, Educ. & Welfare, 678 F.2d 653, 654 (6th Cir. 1982)*).  "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004).  Medical evidence in the record compiled after a claimant's date last insured is only relevant to a disability determination when the evidence relates back to limitations prior to the expiration of the claimant's insured status.  *See Higgs*, 880 F.2d at 863 ("evidence of a medical condition after the insurance cutoff must be considered to the extent it illuminates the claimant's health before that date") (*citing Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir. 1985)). In this case, Dr. Saghafi's examination was conducted three years after the Plaintiff's date last insured and the Plaintiff fails to provide any evidence to demonstrate how Dr. Saghafi's findings would support a conclusion that the Plaintiff was so limited during the relevant period under review.

The ALJ's opinion not only shows that he was aware of the Plaintiff's bilateral foot neuroma, but also demonstrates that he gave careful consideration to all of the evidence in the record and ruled that this diagnosis did not preclude the Plaintiff from working. While there may be some dispute over whether the ALJ should have classified the Plaintiff's bilateral foot neuroma as a severe impairment, the argument is unavailing because any error by the ALJ was deemed harmless following the ALJ's consideration of all of the Plaintiff's impairments in the other steps of the sequential analysis. *See Maziarz*, 837 F.2d at 244.

VII.    <u>DECISION</u>

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court orders the decision of the Commissioner be AFFIRMED.

IT IS SO ORDERED.

<u>s/ Kenneth S. McHargh</u>
Kenneth S. McHargh
United States Magistrate Judge

Date: <u>August 2, 2012</u>.

25